IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| TOUNI GHAMELIAN,         | * |                              |
|                          | * |                              |
|           Petitioner,    | * |                              |
|                          | * | Civil Case No.: SAG-25-02106 |
| v.                       | * |                              |
|                          | * |                              |
| NIKITA BAKER, *et al.*,  | * |                              |
|                          | * |                              |
|           Respondents.   | * |                              |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Petitioner Touni Ghamelian filed a Petition for a Writ of Habeas Corpus ("Petition") on July 1, 2025. ECF 1. In his Petition, he alleges that despite many years of perfect compliance with an order of supervision entered in his immigration case, and after more than forty years residing in this country, Respondents revoked his order of supervision on June 28, 2025 and detained him pending removal. His original Petition included three claims: (1) violation of the Due Process Clause, (2) violation of the Immigration and Nationality Act and regulations implementing the Convention Against Torture ("CAT")[1], and (3) violation of 8 U.S.C. § 1231(a)(6). Petitioner seeks three forms of relief: (1) immediate release from custody; (2) a stay of his order of removal to allow him to pursue a "changed circumstances" argument before the Board of Immigration Appeals ("BIA") regarding his potential removal to Iran; and (3) notice and a meaningful opportunity to be heard before removal to Mexico or any other third country. ECF 1.[2]

---

[1] It does not appear from the record before this Court that the CAT is implicated in Petitioner's original immigration proceedings. *See* ECF 10-2 to ECF 10-8.

Respondents opposed the Petition and filed a motion to dismiss, ECF 10. Petitioner opposed the motion to dismiss, ECF 11. On July 14, 2025, Petitioner filed a motion to amend his Petition as a matter of course under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, ECF 12-1 at 2, and an Amended Petition, ECF 12. In the Amended Petition, Petitioner sought to amend the factual basis for the Petition and the relief sought. ECF 12. In addition to the three claims in the original Petition, the Amended Petition added a claim for failure to adhere to the requirements for revoking a noncitizen's release from immigration detention under 8 C.F.R. § 241.4(l), and a claim for arbitrary detention in violation of the Due Process Clause. *Id*. at 20-22. This Court held a motions hearing on July 16, 2025. For the reasons stated below, the law does not permit this Court to award any of the requested relief to Petitioner in the case's current posture. As a result, the Amended Petition will be dismissed without prejudice. The administrative stay of Petitioner's removal from the United States, ECF 16, to allow adjudication of his Petition, is vacated.

**I.   BACKGROUND**

Petitioner is an Iranian national who has resided in the United States since he was approximately nine years old in 1986. ECF 12 ¶ 31. He has a long-time domestic partner who is a U.S. citizen and a son who is also a U.S. citizen. *Id.*

On October, 1996, Petitioner was convicted of voluntary manslaughter in the Superior Court of California and received a sentence of incarceration. ECF 10-2. The United States government issued removal proceedings on December 3, 1997. *Id.* During his immigration proceedings, Petitioner requested withholding of removal to Iran. ECF 10-4. The immigration judge (IJ) deemed him ineligible for withholding as a result of his conviction. *Id.* The IJ ordered Petitioner removed to Spain or, if Spain would not accept him, to Iran. ECF 10-3. Plaintiff appealed the ruling to the BIA and the United States Court of Appeals for the Ninth Circuit, but his appeals

were denied. ECF 10-5, 10-6. Plaintiff also filed a motion to reopen his immigration proceedings in 2001, which the BIA denied as untimely. ECF 10-7.

On April 3, 2003, the government served Petitioner with a Warrant of Removal/Deportation. ECF 10-8. Since that time, however, Petitioner has remained in the United States under an order of supervision. ECF 10-1 at 4-5.

On June 28, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Plaintiff at his home in Gaithersburg, Maryland. ECF 12 ¶ 40. They served him with a Notice of Revocation of Release signed by Defendant Nikita Baker, ECF 10-9, along with two "Notices of Removal." One of the notices stated, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Mexico." ECF 10-10. The other notice stated, "This letter is to inform you that U.S. Immigration and Customs Enforcement (ICE) intends to remove you to Spain." ECF 10-11.

Petitioner filed his original Petition on July 1, 2025.[3] ECF 1. Since that date, Petitioner has remained in ICE custody, presently at the Port Isabel Service Detention Center in Los Fresnos, Texas. ECF 12 ¶ 40. To date, he has received no additional clarification regarding his anticipated country of removal.

## II.    LEGAL STANDARDS

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." The Supreme Court has held that "§ 2241 habeas corpus proceedings remain available as a forum

---

[3] The government does not contest that the Petition was filed before Petitioner's transport from Maryland and thus is appropriately pending in this Court.

for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis,* 533 U.S. 678, 688 (2001).

## III. ANALYSIS

This Court believes it will be most efficient to approach the Petition by reviewing each form of requested relief, as opposed to Petitioner's characterization of his individual legal claims.

### A. Stay of Removal Proceedings

Petitioner first requests that this Court stay his removal to ensure that he has an opportunity to pursue the petition he has filed before the BIA, arguing that changed circumstances merit reconsideration of his Order of Removal to Iran. ECF 12; ECF 11 at 4. This Court questions, without deciding, whether it would have jurisdiction to take that action. As then-United States District Judge Paul W. Grimm described in *Siahaan v. Madrigal*, No. PWG-20-02618, 2020 WL 5893638 (D. Md. Oct. 5, 2020), the extent of permissible judicial review on these issues is far from a settled question. Regardless, this Court finds that the issue is not ripe for resolution in this case. Petitioner's counsel specified at the motions hearing that Petitioner does not contest his existing order of removal to Spain. *See* ECF 11 at 6. And while he does contest his alternative order of removal to Iran, he has not received a Notice of Removal suggesting present government intent to remove him to that country. His present pursuit of further BIA proceedings regarding the prospect of removal to Iran is nonetheless understandable, given the lack of clarity in his removal status. But this Court sees no ripe issue, in the present posture, warranting a stay of removal to Iran when Petitioner has not received notice that any such removal is contemplated.

### B. Third Country Removal

To the extent the government seeks to remove Petitioner to Mexico or any other "third country" not listed in his Order of Removal, he is a member of a class certified by the District of

4

Massachusetts in *D.V.D. v. U.S. Dept. of Homeland Security*, Civ. No. 25-10676 (D. Mass.). That Court issued a preliminary injunction barring class members' removal absent certain due process. 2025 WL 1142968 (D. Mass. Apr. 28, 2025). But on June 23, 2025, the Supreme Court stayed that order. *See DHS v. D.V.D.*, 606 U.S. ___, 2025 WL 1732103, at *1 (June 23, 2025). The preliminary injunction and subsequent orders regarding the injunction are presently on appeal to the United States Court of Appeals for the First Circuit, while the class members' claims proceed in the district court. *See D.V.D.*, No. 25-10676, ECF 180. In light of Plaintiff's apparent class membership,[4] claims relating to his potential third country removal are more appropriately resolved in the *D.V.D.* case and will not be addressed in this Court.

**C.  Release from Custody**

Count III of the Petition purports to assert a "violation of 8 U.S.C. § 1231(a)(6)." ECF 1 at 16. Permitting Petitioner to advance a cause of action under that provision would contravene 8 U.S.C. § 1231(h), which expressly provides that "[n]othing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."  However, this Court construes Petitioner's habeas claims to be premised on the notion that his detention is "in violation of the Constitution or laws" of the United States, in that his due process rights have been violated because the removal period described in 8 U.S.C. §1231(a)(1)(A) has expired, as has the continued detention period authorized by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

The parties agree that Petitioner is presently detained pursuant to 8 U.S.C. § 1231(a)(6).  A brief overview of the relevant provisions of § 1231 is warranted. Section 1231(a)(1)(A) provides

---

[4] Of course, should Petitioner be removed to Spain or Iran, he would not be a member of the *D.V.D.* class.

that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period.")." The parties agree that Petitioner's removal period began and ended years ago, because his order of removal issued in 1998.

Section 1231(a)(3) provides that if the alien does not leave or is not removed during the removal period, the alien "shall be subject to supervision" under the regulations prescribed by the Attorney General. But § 1231(a)(6) specifies that three particular categories of inadmissible or criminal aliens "may be detained beyond the removal period." One such category, relevant to this case, is "[a]n alien ordered removed who is inadmissible under section 1182 of this title." The parties agree that Petitioner falls within that category and § 1231(a)(6), because of his prior criminal conviction. They disagree as to what that provision authorizes with respect to the "re-detention" of an alien who had been previously released under supervision.

Both parties, at least in part, rely on *Zadvydas* to support their positions. In that case, the Supreme Court weighed whether § 1231(a)(6) allows the indefinite detention of an alien pending removal, or whether the statute contains an implicit "reasonable time" limitation subject to federal court review. Both aliens at issue in *Zadvydas* had been detained for lengthy periods after they received their orders of removal. Kestutis Zadvydas, who had a long criminal record, was ordered deported in 1994 and remained detained until he filed a petition for writ of habeas corpus in September 1995. 533 U.S. at 684. Zadvydas had been born of Lithuanian parents in a displaced persons camp in Germany and had immigrated to the United States as a young child. *Id*. Kim Ho Ma, who was convicted of manslaughter in a gang-related shooting, remained in custody following the end of his removal period in early 1999 and had to file a petition for writ of habeas corpus later that year to obtain release. *Id*. at 685.

In *Zadvydas*, the government argued that because §1231(a)(6) provides no limit on the length of time beyond the removal period a qualifying alien "may be detained," that the length of detention was up to the Attorney General, not the courts. The Supreme Court disagreed, reasoning that a statute allowing for indefinite and potentially permanent detention "would raise a serious constitutional problem." 533 U.S. at 689. The Supreme Court found no "clear indication of congressional intent to grant the Attorney General the power to hold indefinitely in confinement an alien ordered removed." *Id.* at 697. The Supreme Court counseled that "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. However, the Supreme Court also specified the need for habeas courts to "recognize Executive Branch primacy in foreign policy matters." *Id.* at 700. With those advisements, among others, the Supreme Court deemed it "practically necessary to recognize some presumptively reasonable period of detention" and deemed a six-month period to be presumptively reasonable. *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court expressly specified that the six-month presumption did "not mean that every alien not removed must be released after six months." *Id.* In fact, despite the fact that by the time of the Supreme Court decision, both Zadvydas and Ma had been detained for longer than six months and it had been years since they had been released on supervision, the Supreme Court remanded both cases for further proceedings consistent with its opinion. *Id*. at 702. In other words, the Supreme Court directed the lower courts in both cases to weigh whether it had been

7

determined "that there is no significant likelihood of removal [of Zadvydas and Ma] in the reasonably foreseeable future." *Id*. at 701.

Against that background, this Court considers Petitioner's argument that because the 90-day statutory removal period plus a consecutive additional three-month period expired many years ago, Petitioner cannot be subject to further detention under § 1231(a)(6). This Court finds no support for that reading in *Zadvydas* or the text of § 1231(a)(6). *Zadvydas* did not (1) address a situation where an alien was released and then re-detained or (2) purport to create some sort of limitations period for § 1231(a)(6) detention. Instead, *Zadvydas* addressed a more limited question: at what point does the length of § 1231(a)(6) detention offend due process rights? And it answered that question by imposing a six-month presumption of constitutional detention, finding only that further detention becomes impermissible if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. The limitations on the *Zadvydas* holding are highlighted by the fact that the Supreme Court remanded those defendants' cases for evaluation of the permissibility of further detention under that standard, despite the fact that by that time Zadvydas had been released for five 5 years and Ma for two years. *See id*. at 702. In the end, then, neither the language of § 1231(a)(6) nor *Zadvydas* supports the notion that the government's ability to detain Petitioner expired in the late 1990s.

Petitioner further asks this Court to apply the *Zadvydas* standard and find that there is no significant likelihood of his removal in the reasonably foreseeable future, because the government is only "seeking" travel documents from two different countries and has no concrete plan for his removal. This Court agrees with the government that Petitioner's due process argument is premature. The government is entitled to its six-month presumptive period before Petitioner's continued § 1231(a)(6) detention poses a constitutional issue. However, should the end of that six-

month window approach without further action, Petitioner would be free to file a similar action in the appropriate venue challenging the constitutionality of his continued detention under the principles elucidated in *Zadvydas*.

As a practical matter, this Court fully agrees with Petitioner that he has demonstrated, through decades of perfect compliance with supervision conditions, that detention would be unnecessary to guarantee his availability for removal, once ordered. But that is not the legal standard this Court must apply.[5] Understandably, Petitioner came to rely on the fact that in every prior administration (including the previous term of the existing President), removal to third countries proved exceedingly rare. However, that reliance interest and Petitioner's exemplary record on supervision do not permit this Court to ignore "Executive Branch primacy in foreign policy matters" or to read restrictions into § 1231(a)(6) that simply are not there. In the end, this Court cannot conclude that habeas relief is warranted at this stage, because Petitioner has been detained for less than one month.

## IV.  CONCLUSION

For the reasons stated above, the government's motion to dismiss the Petition, ECF 10, is GRANTED. The Amended Petition, ECF 12, is DISMISSED WITHOUT PREJUDICE to Petitioner's refiling of a later petition for the same or similar relief, and this Court's order, ECF

---

[5] In the Amended Petition, Petitioner contends that the government failed to adhere the requirements for revoking a noncitizen's release from immigration detention under 8 C.F.R. § 241.4(l). ECF 12 at 20-21. Section 241.4(l) affords ICE significant discretion to revoke release, and Petitioner does not allege any specific violations of the regulation allowing for revocation when ICE determines that it "is appropriate to enforce a removal order…against an alien." 8 C.F.R. § 241.4(l)(2). As such, the Court cannot conclude that relief is warranted at this stage, but that does not prevent Petitioner from seeking future relief should he not receive the process that is constitutionally required. 8 C.F.R. § 241.4, § 241.13; *see also Portillo v. Decker*, No. 21 CIV. 9506 (PAE), 2022 WL 826941, at *4, *6 (S.D.N.Y. Mar. 18, 2022) (describing administrative framework governing the detention of removable noncitizens).

16, administratively staying Petitioner's removal from the United States to permit this Court's adjudication of this Petition is vacated. The Clerk is directed to CLOSE this case.

Dated: July 22, 2025                                    /s/
                                              Stephanie A. Gallagher
                                              United States District Judge